ISRAEL PIERCE, *adm'r* OF HUMPHREY PIERCE, AND OTHERS
    *vs.* LUKE TIERNAN AND OTHERS.—*December,* 1838.

D. and P. shipped a cargo on a foreign voyage on joint account, in the name
    of D.; after the vessel sailed, D. assigned his undivided moiety for the bene-
    fit of creditors, and the return cargo came to the hands of his trustees.
    They refused to pay P. more than his undivided moiety of the proceeds of
    the return cargo, but it appearing that in fact he had paid more than his
    moiety on account of this partnership transaction, and with a view to it, *it
    was held,* upon a bill filed against the trustees, of which he was one, that
    he had a lien on D's moiety of the proceeds for his re-imbursement.

Advances made by one party, interested in a proposed joint adventure in mer-
    chandise, for and on account of the adventure, to another party also inter-
    ested therein, in whose name the operation was conducted, are equivalent
    in every equitable view to an actual purchase of the merchandise bought
    for, and by which the transaction was carried on.

The excess of one partner's advances over those of the other, constitutes a
    preferred claim upon the partnership property or its proceeds.

The creditors of a partnership are to be first paid out of partnership effects.
                                                              *Per* BLAND, *Ch.*

APPEAL from *Chancery.*

THE bill in this cause was filed on the 5th of March, 1825,
by *Humphrey Pierce,* (intestate of the appellants,) and al-
leged, that a short time prior to the 9th December, 1799, a
certain *William Duncan* being the owner of a brig called the
*Betsey and Peggy,* sold to the complainant one-half of said
vessel for $3,150, and the said *Duncan* and complainant
having agreed to be jointly interested in a cargo to be shipped
on board said brig to *Saint Domingo,* the said *Duncan* was
authorized to purchase a cargo for her on joint account; that
he, on the 9th December, 1799, purchased from complainant
as a part of said cargo, to be shipped on joint account, as
aforesaid, goods to the amount of $19,389 61, and also pur-
chased from others goods to the value of $12,923 34, making
the cargo shipped, as aforesaid, $32,312 95, exclusive of
insurance and other charges, of which the complainant ac-
tually paid for said cargo, the sum of $29,448 08, and also
$3,350 50, as will appear by promissory notes in his posses-
sion, given by him to and in favour of said *Duncan,* and since

paid by complainant, that said brig sailed on her voyage, and previous to her return the said *Duncan* having been unfortunate in his business, made an assignment of his estate to a certain *James Dall*, (since deceased,) *Luke Tiernan, Archibald Stewart*, and complainant, in trust for certain of his creditors; that the said *Duncan*, without the knowledge or consent of complainant, made or procured to be made the invoices and bills of lading for the cargo aforesaid, in his said *Duncan*'s name, so that the same appeared as his property, but in the indenture aforesaid, he only transferred to said trustees one undivided moiety of said vessel and cargo, and the proceeds thereof, stating that the remaining moiety belonged to complainant; that on the return of the vessel, *James Dall*, who was at that time the acting trustee, to whose management his co-trustees had committed the business of the said *Duncan*, took possession of said vessel and cargo without the consent of complainant, and after disposing of the same, accounted to complainant for one-half of the nett proceeds thereof, and nothing more, contending that complainant had no lien on the remaining one-half of said cargo for re-imbursement of the money expended by him in the purchase thereof, but as regarded said sum so expended beyond the value of the complainant's one-half of said vessel and cargo, he was to be considered as a creditor of said *Duncan*, and would be only entitled to a dividend from such effects of said Duncan as would remain after the full payment of the preferred claims provided for in his indenture of trust; that said *Dall* refused to pay complainant his advances for Duncan, or any thing beyond the half part of the proceeds of said cargo, but that he ultimately expected to recover his right in the premises; the bill then proceeded to allege the death of said Dall; that the complainant had other claims as a general creditor of *Duncan*, and that there were funds in the hands of the trustees still undistributed, and prayed process, &c. a discovery and account of the trust funds, payment of his advances upon the joint adventure out of the proceeds thereof, and relief generally.

The complainant exhibited with his bill an indenture of

the 14th February, 1800, between *William Duncan* of the one part, and *James Dall, Luke Tiernan, Humphrey Pierce,* and *Archibald Stewart* of the other part, which conveyed all the said *Duncan's* estate in trust for such of his creditors as should sign and seal the said deed within thirty days, towards payment of their several claims. The recitals of the property conveyed, included "one undivided moiety of the cargo lately shipped on board the brig *Betsey and Peggy* by the said *William Duncan,* also one moiety of all sums for which it had been already sold or may hereafter sell for, as also one moiety of the proceeds, or the property purchased with such proceeds; the other half of said cargo being the property of *Humphrey Pierce*" in trust, first to pay certain specified creditors, (of whom the said *Humphrey Pierce* was not one;) then as indemnity for said *Duncan's* special bail, his securities on bond to the United States, then as to the *balance,* that it shall be distributed amongst all the creditors of the said *William Duncan,* who shall have signed and sealed *these presents* within thirty days from the date thereof, in equal proportions, and also among certain named creditors who were not required to sign said deed. This indenture was in terms made to operate as a release of all rights in favour of the grantor, and *was signed by all the grantees* in their character of creditors.

James Dall, Jr. and Eleanor Dall, executors of James Dall, in their answer, admitted the execution of the deed of trust by Duncan, but denied that their testator was the sole acting trustee; it admitted that he acted as trustee, but are unable to state what funds he received or what disposition he had made of them; that they have no knowledge of the trust except what is derived from a statement furnished to the defendants, by one of the representatives of the surviving partners of the firm of James Dall and Co., by which it appears, that on the 15th April, 1808, there was due to the said trustees from *James Dall and Co.,* and not from James Dall individually, the sum of $6,455 23, and which statement they filed with their answer.

The answer of *Luke Tiernan* and *Archibald Stewart* admitted, that *Duncan* and *Pierce* were jointly interested in the cargo of the *Betsey and Peggy*, but did not know that *Duncan* was authorized to purchase the cargo on joint account; they also admitted, that *Duncan* purchased of complainant a part of the said cargo to be shipped on joint account, to the amount of $19,389 66; that *Duncan* purchased from other persons to amount of $12,923 34, making the cargo shipped amount to $32,313, but do not know what sum the complainant paid for the cargo or vessel. The answer then admitted the assignment and its recitals; that all the trustees, including complainant, acted in concert in the execution of the trust, and that complainant accepted and received one-half of the nett proceeds of the said joint adventure with a full knowledge of all rights he then had or now pretends to have in reference to the other moiety thereof, and that the other half or moiety of the said proceeds was applied by the said trustees with the full knowledge and consent of the complainant, pursuant to and in conformity with the trusts created by said deed of assignment, and did not pretend to make any claim thereon. The answer then admitted that *Duncan* did render an account to the complainant, by which it appeared there was a balance due to him by *Duncan* on his promissory notes of $9,694 83. They have no knowledge of any claim of $3,352 50 due complainant for insurance. The answer then called on complainant for an account of the money he had received as trustee, and that he was indebted to the trustees $6,775 71, and do not know that complainant is a general creditor of said *Duncan*. That *Dall* has funds which should be distributed, and that they have funds, viz: $5,948 23 in the hands of *Archibald Stewart*, and $6,062 24 in the hands of *Luke Tiernan*, for distribution.

After these pleadings the parties proceeded to take proof. The proof established six notes of *H. Pierce*, in favour of *William Duncan*, all dated 9th December, 1799, $13,208 42, and the following accounts, signed by *Duncan*.

Pierce, *adm'r* of Humphrey Pierce, *et al vs.* Tiernan, *et al.*—1838.

*First cost of Cargo shipped on board the* Betsey and Peggy, Nicholas Gorden, *Master, for* Cape Francois, *on joint account of* Humphrey Pierce *and* William Duncan, *each one-half concern.*

| At. | Months. | Days. | | Dolls. | Cts. |
|-----|---------|-------|--------------------------------------|--------|------|
|     |         |       | Humphrey Pierce, per bill, . | 19,389 | 66 |
| "   | 4a4½    | "     | George F. Warfield, " . . | 3,000 | 00 |
| "   | 9       | "     | James Dall & Co. " . . | 1,258 | 95 |
|     | 8       |       | John McNeal, " . . | 1,920 | 00 |
|     | 5a6     |       | Stephen Wanto, " . . | 1,900 | 00 |
|     | 8       |       | William Duguid, " . . | 1,269 | 39 |
|     | 4       |       | Robert C. Boislandry, " . . | 200 | 00 |
|     |         | 90    | Jonas Marean, " . . | 2,000 | 00 |
|     |         | 60    | Yates & Campbell, " . . | 1,375 | 00 |
|     |         |       | | $32,313 | 00 |

CHARGES.

|                                          |         |    |       |    |
|------------------------------------------|---------|----|-------|----|
| Drayage, labourage and cooperage, . . | $138 | 50 |       |    |
| Insurance on $20,000, at 16 per ct. with policy, | 3,202 | 50 |       |    |
| Insurance on $20,000, at 17½ per ct. with policy, | 3,502 | 50 | 6,843 | 50 |
|                                          |         |    | $39,156 | 50 |

½ for Humphrey Pierce, $19,578 25
½ for William Duncan, 19,578 25

$39,156 50

E. and O. excepted.

BALT. *9th Dec.* 1799.

WM. DUNCAN.

258     CASES IN THE COURT OF APPEALS

*Pierce, adm'r of Humphrey Pierce, et al vs. Tiernan, et al.—1838.*

### EXHIBIT No. 2.

Dr.   Mr. Humphrey Pierce *in account with* Wm. Duncan.

*Dec.* 9. To ½ cost of the cargo shipped per the
          brig Betsey and Peggy, per account,   $19,578 25
          To ½ of said brig,   .   .   .   .   3,150 00
          To ½ of portage bill, .   .   .   .   175 00
          My notes at 10 months, for   .   .   9,694 83

                                        $32,598 08

1799.                    Cr.
*Dec.* 9. By amount of sundry goods
          for bill,   .   .   . $19,389 66
          Note at 120 days, for   .   2,000 00
          Note at 75 days, for   .   2,000 00
          Note at 5 months, for   .   2,500 00
          Note at 6 months, for   .   3,202 50
          Note at 8 months, for   .   2,200 00
          Note at 9 months, for   .   1,305 92
                              ————————$32,598 08

     E. and O. excepted.
              Balt. 9th December, 1799.
                        Wm. Duncan.

On the 4th June, 1835, the auditor reported the following accounts :

### ACCOUNT A.

*The Trustees of* William Duncan *in account with* Humphrey Pierce, *complainant.*

Dr. 1799, *Dec.* 9. To amount of goods furnished by *Humphrey Pierce* to be shipped to St. Domingo, on board the brig Betsey and Peggy, on joint account of said *Duncan* and *Pierce*, as per proceedings,   . $19,389 66
To the seven promissory notes drawn by *Pierce*
     in favour of Duncan,   .   .   .   .   13,208 42

                                        $32,598 08

Pierce, *adm'r* of Humphrey Pierce, *et al vs.* Tiernan, *et al.*—1838.

Cr. By one-half of the brig Betsey and Peggy, purchased by
     *Pierce* from Duncan, and included in notes,   $3,150 00
By one-half of cost of her outward cargo, .    .    19,578 25
By one-half of portage bill,    ·    .    .    .    175 00
By balance due *Humphrey Pierce*, for outward
    cargo,  .    .    .    .    .    .    .    9,694 83

                                         $32,598 08

## ACCOUNT B.

*The adventure of brig* Betsey and Peggy *in account with*
Humphrey Pierce *and* William Duncan.

Dr. To *Humphrey Pierce*, for one-half of the outward
    cargo,  .    .    ·.    .    .    .    .   $19,578 25
To William Duncan, do.    .    .    .    19,578 25

                                         $39,156 50

Cr. By amount of nett proceeds of return cargo, $21,245 10
By loss on adventure,    .    .    .    .    .    17,911 40

                                         $39,156 50

## ACCOUNT C.

*The Trustees of* William Duncan *in account with* Humphrey
Pierce, *complainant.*

Dr. To balance of adventure due *H. Pierce*, as stated in
    account Λ,    .    .    .    .    .    .   $9,694 83
To one-half of insurance charged to complainant,
    and included in the above notes given by him
    to Duncan,    .    .    .    .    .    .    3,352 50
To one-half of the nett proceeds of the return
    cargo of Betsey and Peggy,    .    .    .    10,622 55

                                         $23,669 88

Cr. By one-half of the nett proceeds of the return cargo of the Betsey and Peggy, paid over to complainant by trustees of Duncan,    .    .    .    . $10,622 55

By balance due *H. Pierce,* for which he claims a preference of the other half of the nett proceeds of the return cargo,    .    .    . 13,047 33

$23,669 88

## ACCOUNT D.

Dr. To balance due *Humphrey Pierce* the complainant, brought down,    .    .    .    .    . 13,047 33

By cash received by *the trustees* for one-half of the nett proceeds of return cargo of Betsey and Peggy, claimed by complainant, to be applied towards the satisfaction of the balance due him as per contra,    .    . $10,622 55

By balance due complainant, for which he claims to come in for a distribution with the general creditors,    .    .    .    .    .    . 2,424 78

$13,047 33

The auditor in his report objected only to the foregoing accounts, so far as the complainant claimed credit for $3,352 50 paid for insurance. He submitted to the chancellor, that for one-half of that item, the complainant had a claim upon the adventure, having paid the whole amount of the insurance by his notes to *Duncan,* and there being no averment or proof that Duncan paid any insurance whatever.

In conformity with this view, the auditor stated another account D, similar to account C, in which he only charged the trustees for insurance $1,676 25, and thus reduced complainant's preferred claim to $11, 371 08, and his general claim to $748 53.

The defendants excepted to account A, on the ground that $13,208 42, the amount of notes loaned by *Pierce* to Duncan, entitled the complainant to come in as a general creditor.

2. That *Pierce* ought to be charged with the additional sum of $1,676 25, being half the amount paid by Duncan for insurance, whereas this charge and item is omitted in account A.

3. Objected to the charge of insurance in accounts C and D.

4. Objected to accounts C and D, so far as they gave complainant any preference over the proceeds of the cargo of the brig.

At March term, 1837, the chancellor (*Bland*) dismissed the bill, and assigned the following reasons:

"It is the opinion of the court, that all the joint creditors of the partnership of *Humphrey Pierce* and *William Duncan* would be entitled to be first paid out of the partnership effects; but as there is no satisfactory proof of *Humphrey Pierce* having been a creditor of that firm, and not merely of *William Duncan*, the plaintiff is not entitled to a preference as claimed in his bill, or to any relief whatever under the pleadings and proofs."

From this decree the representatives of *Humphrey Pierce*, now complainants in the cause, appealed.

The cause was argued before BUCHANAN, Ch. J., STEPHEN, ARCHER, CHAMBERS, DORSEY and SPENCE, Judges.

J. JOHNSON, S. I. DONALDSON, and R. JOHNSON, for the appellants.

This bill was filed by the intestate of the appellants, on the 5th March, 1825, against the appellees, the trustees of *William Duncan*, (who was also made a defendant, but whose name as a defendant was afterwards, by agreement of parties, stricken from the bill,) in which the appellants' intestate sought to recover the entire proceeds of the cargo of the *brig Betsey and Peggy*, in preference to the general creditors of the said *Duncan*, and as to the residue of his claim, that he should be admitted to an equal distribution with the general creditors of Duncan.

The evidence will show, that early in December, 1799, the said *Duncan* and *Pierce* agreed to ship on joint account, a

cargo of merchandise on board the brig *Betsey and Peggy*, to *St. Domingo*. That by their agreement, dated the 13th of that month, they were each to be concerned to the amount of one-half, and that the profits or loss arising thereon, was to be divided accordingly, and in the same proportions, for the returns made for said cargo.

By a paper marked Exhibit No. 1, dated 9th of December, 1799, and which is proved to have been signed by *Duncan*, it appears that the first cost of the cargo was $39,156 50, being in merchandise $32,313, and insurance and other charges $6,843 50; and the court will find an admission, signed by counsel, that the nett value of the return cargo was $21,212 50, exhibiting a loss consequently of $17,944; as, however, only one-half of the insurance charge was effected, the actual cost of the outward cargo was only $35,804, and the loss $14,591 50. The same paper, No. 1, shows of the merchandise composing the cargo, *Pierce* the complainant, furnished $19,389 66.

By a paper marked Exhibit No. 2, dated the same day, and also proved to have been signed by *Duncan*, a balance is shewn to be due *Pierce* of $9,694 83, for which *Duncan* gave *Pierce* his note at 10 months from that date, numbered 7, and this note, which has not been paid, but was produced by *Pierce*, proved and returned with the commission, constitutes a part of the complainants' claim, now sought to be recovered.

The above balance of $9,694 83 is produced by the following statement of the account, as prepared by Duncan himself.

He debits *Pierce* with ½ cost cargo and charges, $19,578 25
He debits ½ cost of brig owned by Duncan, . 3,150 00
He debits ½ portage bill, . . . . 175 00

$22,903 25

He is then credited with goods fur-
nished by him, . . . $19,389 66
And 6 promissory notes, amounting to 13,208 42
$32,598 08

Leaving a balance due *Pierce* of, . . $9,694 83

The six notes given by *Pierce* to Duncan, numbered from 1 to 6, were all paid by *Pierce*, produced and proved under the commission.

The merchandise on board the brig, other than that which *Pierce* furnished, was $12,923 34.

The six notes given by *Pierce* to Duncan, were for ½ of
this last mentioned merchandise, being . $6,461 67
One-half the cost of the brig, . - . . 3,150 00
One-half the insurance charged, . . . 3,352 50
One-half portage bill, . . . . . 175 00
One-half charges on cargo, . . . . 69 25

Making the precise amount of the 6 notes, $13,208 42

The capital of *Pierce* then embarked in the adventure was,
1st. The merchandise furnished by him, . $19,389 66
2d. The ½ cost of the residue of the mer-
chandise, . . . . . . 6,461 67
3d. The ½ the insurance, (being all that was
in fact paid,) . . . . . 3,352 50
4th. The ½ charges on the cargo, . . 69 25

$29,273 08

Duncan's capital was,
1st. The ½ cost of merchandise, other than that which
*Pierce* supplied, . . . . $6,461 67
2nd. The ½ charges on cargo, . . . 69 25

$6,530 92

The loss is shown to have been, . . . $14,591 00
And as each was to bear one-half, the loss of
each was, . . . . . . 7,295 50

The admission will show, that of the proceeds of the return cargo, (being $21,212 50,) *Pierce* received but one-half, or $10,606 25, the other half being retained by the trustees of Duncan.

By the preceding statement it appears, that Duncan's proportion of the loss exceeded his capital by the sum of $764 83, and that after deducting *Pierce's* proportion of the loss from the capital supplied by him, and giving him the entire proceeds of the return cargo, (as ought to have been done,) there would remain due him the like sum of $764 83, for which he claims to be considered as a general creditor of Duncan.

In addition to this balance of $764 83, the complainant claims to be a general creditor to the amount of $3,507 80, being the amount of three other notes of Duncan, held by him, and numbered from 8 to 11, inclusive.

It further appears, that on the 14th of February, 1800, after the vessel had sailed on the outward voyage and before her return, *Duncan*, who was greatly embarrassed in his circumstances, executed to *James Dall, Luke Tiernan, Archibald Stewart*, and the complainant, a deed of trust for the benefit of his creditors as therein set forth, in which deed was included his moiety of the cargo of the said brig, it being stated in said deed, that the other moiety was "the property of said *Humphrey Pierce.*"

The deed was signed by complainant as a party.

The case was referred to the auditor, who stated and reported various accounts, to which the parties filed exceptions, and the same having been heard by the chancellor, the complainants' bill, by his decree of the 16th of May, 1837, was dismissed with costs.

From this decree the complainants appealed, and will contend :

1. That there is abundant evidence to show that *Pierce* was a creditor of the partnership, and as such was entitled to be paid out of its funds in preference to the individual creditors of *Duncan*.

2. That the right of the solvent partner to be paid the excess of his advances out of the funds of the partnership, in preference to the individual creditors of the bankrupt partner is not confined to general partners, but the rule is also applicable to parties in particular adventures.

3. That the merchandise purchased by *Duncan* in the market, was not purchased on joint account, but on his (Duncan's) own reponsibility, and to make up his proportion of the cargo, and consequently the persons who sold the goods, if they have not been paid, are not creditors of the partnership, but of Duncan alone.

4. That the right of *Pierce* to the preference claimed, is not affected by his becoming a party to the trust deed of 14th of February, 1800.

5. That for the balance of the excess of capital furnished by *Pierce*, more than *Duncan*, after paying the former the whole proceeds of the return cargo, as should have been done, he is to be regarded as a general creditor of *Duncan's* estate, and for such balance, and the amount of the notes numbered from 8 to 11, he is to receive a dividend with the general creditors.

6. It will be further contended, that but one-half of the cargo was insured, and that the whole premium on that half was paid by *Pierce*.

MAYER and JOHN SCOTT, for the appellees, contended:

1st. Whatever might originally have been the merits of *Humphrey Pierce's* claim against the fund in question, his preferred rights were extinguished by his becoming a party to the deed of trust of Duncan, and his releasing Duncan on the terms of that deed, as one of the general creditors of Duncan, and his claim, particularly after such long acquiescence, cannot be entertained.

2d. That the proceedings show, that if there was a special partnership between *Duncan* and *Pierce*, there are creditors of that partnership unsatisfied, whose claims are to be preferred to any claim of *Pierce* on the supposed partnership fund, and who appear among the creditors of *Duncan*, signing his release.

3d. There is no evidence of any indebtedness of Duncan to *Pierce* on a joint adventure, or special partnership account, but the testimony shows only a claim on general account.

4th. *Pierce* had, under the circumstances, no preferred claim against the proceeds of the adventure mentioned in the proceedings, but if he ever had, he forclosed himself of his right, by allowing that particular fund to be distributed, and has no right, especially after such a lapse of time, to satisfaction out of the trust fund now in hand, which does not arise from that adventure.

CHAMBERS, Judge, delivered the opinion of the court.

We think the proofs in the cause establish the claim of the appellant, against the partnership fund admitted to be in the hands of trustees of Wm. Duncan, which claim, so far as the same was allowed by the auditor's report of 4th June, 1835, as a preference claim against the proceeds of the return cargo of the *Betsey and Peggy*, should have been decreed to the complainant. There is no evidence in the cause to establish any other claim as a preference claim against the proceeds of said cargo, and as by the agreement of the solicitors, no exceptions can be taken on account of the want of parties, this court can only decide upon the state of proof as if it were presented in a cause in which all persons whose interests may be affected were parties to the record, and represented by the solicitors who have assented to the agreement. This view of the case avoids any difficulty from the consideration that the several persons are not made defendants, from whom *William Duncan* is said to have purchased the goods constituting his proportion of the outward cargo.

Of these persons the representatives of James Dall and Co. alone are before the court, and the proofs are not furnished on which a preference can be allowed against the partnership fund for the amount of their sales on account of said cargo.

To the amount stated in the auditor's report of 4th June, 1835, the complainant became a creditor solely in virtue of the partnership transactions between Duncan and himself; the advances made were exclusively for and on account of the partnership property and risk, and equivalent in every equitable view to an actual purchase by *Pierce* of the goods

for and on account of the adventure which Duncan should have furnished; *Pierce,* in a word, procured his own moiety of the cargo, and *then* paid to Duncan (by giving his notes, which were subsequently paid by *Pierce*) one-half the amount which Duncan had contracted to pay for the residue of the cargo.

This payment to *Duncan* for a portion of the cargo agreed to be furnished by *Duncan,* and the item for excess of insurance paid by *Pierce,* beyond his moiety, constitute the aggregate of the preferred claim of *Pierce.* For the balance of his claim, beyond the extent of the proceeds of the return cargo in the hands of the trustees, as well as for the other claims due to *Pierce,* resort must of course be had to the other assets in the hands of the trustees, by a distribution to be made with the other creditors of Duncan. For these reasons the court reverse the decision of the chancellor.

**DECREE REVERSED.**